# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AMANDA BARRY, *et al.*, | * |
| Plaintiffs | * |
| v. | *  CIVIL NO. JKB-17-3070 |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM**

Plaintiffs Amanda and Sean Barry brought this action against Mrs. Barry's insurer, Defendant Nationwide Mutual Insurance Company and, after amending their complaint on December 7, 2017, now assert two Counts. (*See* Am. Compl., ECF No. 17.) In Count I, Plaintiffs allege that Defendant breached its insurance contract with Mrs. Barry, and in Count II, Plaintiffs allege that Defendant failed to act in good faith in handling her claim in violation of Maryland Code (2013 Repl. Vol.), § 3-1701 of the Courts and Judicial Procedures Article. (*Id.*) Before the Court is Defendant's motion to dismiss Count II under Federal Rule of Civil Procedure 12(b)(6). (*See* Mot. Dismiss, ECF No. 19). Plaintiffs have responded in opposition (ECF No. 21) and Defendant has replied (*see* Am. Reply, Line Filing Ex. 1, ECF No. 23-1).[1] The motion is therefore ripe for review, and there is no need for a hearing to resolve the matter.

---

[1] Defendant filed a reply on January 17, 2018 (ECF No. 22) but then submitted an amended reply on January 22. The Court does not permit additional briefing without its permission, but this amended reply appears to only redact arguments (i.e., it does not provide any additional material) and appears to be amended at the behest of the Plaintiffs' counsel (i.e., it appears that there is consent for Defendant to amend its reply). (*See* Line Filing, ECF No. 23.) Furthermore, the Defendant submitted this amended reply on January 22 and as it is now February 6, Plaintiffs have had ample time (more than fourteen days) to oppose Defendant's amendment. Therefore, the Court will treat Defendant's amended reply (ECF No. 23-1) as its Reply.

*See* Local Rule 105.6 (D. Md. 2016). Plaintiff has sufficiently stated a claim for failure to act in good faith, and therefore Defendant's motion will be denied by accompanying order.

I. *Background*

Amanda Barry was injured on July 27, 2014 when Jamil Beale crashed into her vehicle in Baltimore City. (Am. Compl. ¶¶ 5-9.) As a result of this crash, Mrs. Barry suffered various harms, including "a hand fracture, lost wages, and loss of consortium." (*Id.* ¶ 9.) Mr. Beale was insured by GEICO Insurance Company ("GEICO") at $30,000 per person/$60,000 per occurrence. (*Id.* ¶ 10.) GEICO offered Mrs. Barry the full policy limits of Mr. Beale's policy, i.e. $30,000, as a settlement. (*Id.* ¶ 11.) Mrs. Barry and her husband Sean Barry (collectively, "Plaintiffs") had an insurance policy with Nationwide Mutual Insurance Company ("Defendant") which included $100,000 in uninsured motorist ("UIM") insurance. (*Id.* ¶ 14; *see* Insurance Policy 8, Am. Compl. Ex. 1, ECF No. 17-2.) On August 12, 2016, Plaintiffs' counsel sent Defendant notice of the settlement offer and requested permission to accept it. (*Id.* ¶ 11; Section 19-511 letter, Am. Compl. Ex. 2, ECF No. 17-3.) Under Maryland Code (2017 Repl. Vol.), § 19-511 of the Insurance Article ("Section 19-511"), if an insurer offers a settlement to a victim that would exhaust the insurance policy, and if the victim has UIM insurance, the victim must send notice of that settlement to her UIM insurance provider. *See* Md. Code Ann. Ins. Art. § 19-511(b). The UIM insurance provider must then respond, within sixty days, either consenting to the acceptance of that settlement offer or refusing to consent to such offer. *Id.* § 19-511(c).

It was not until November 30, 2016, over 100 days after receipt of Plaintiffs' counsel's letter (the "Section 19-511 letter"),[2] that Defendant responded to Plaintiffs' counsel. (Am.

---

[2] There is some dispute among the parties as to when the Section 19-511 letter was received by Defendant. As this memorandum is evaluating a motion to dismiss, the Court will accept the allegations in Plaintiffs' complaint as true. However, regardless of whether the Court takes as true Plaintiffs' allegation that Defendant received the letter on August 16, 2016 (the "Date of Delivery," *see* Section 19-511 letter at 6), or Defendant's assertion that the letter was

Compl. ¶ 12; November 30 letter, Am. Compl. Ex. 3, ECF No. 17-4.) In this letter, Defendant's agent permitted Plaintiffs' counsel to accept the settlement offer. (*See* November 30 letter.)[3] Defendant's agent also introduced herself, and stated that she was handling the claim. (*Id.*) At some point, Plaintiff requested that Defendant pay out the entire $100,000 policy. (*See id.* ¶ 34.) On December 22, 2016 Defendant offered Mrs. Barry $33,924.00, and "refused to negotiate further." (*Id.*) Defendant "did not dispute any of the injuries, medical treatment, bills or lost wages," and did not provide "any explanation or supporting documentation to justify [its] evaluation." (*Id.*)

On March 17, 2017, Mrs. Barry filed a complaint with the Maryland Insurance Administration ("MIA"), alleging that Defendant had failed to act in good faith in handling her claim. (Am. Compl. ¶ 23.) On May 8, 2017 the MIA found that Defendant did not breach its contract with Mrs. Barry and Defendant had not failed to act in good faith. (*Id.* ¶ 24.)[4] Plaintiffs filed this action against Defendant in the Circuit Court for Baltimore City on July 3, 2017, asserting breach of contract and lack of good faith. (*See* Notice of Removal, ECF No. 1; Compl., ECF No. 2.) Defendant was served process on October 6, 2017 and removed the case to this Court on October 27. (*See* Notice of Removal.) After Defendant filed a motion to dismiss, Plaintiffs amended their complaint and Defendant filed a second motion to dismiss Count II of the Amended Complaint, which purports to state a claim for failure to act in good faith. (*See*

---

received on August 18, 2016 (the date under the "Received" stamp, *see* Section 19-511 letter at 7), neither party presents evidence or argument that Defendant's response on November 30, 2016 was within the sixty days prescribed by Section 19-511.
[3]This letter references a bodily injury claim for a "Pherin Fields." It is unclear who Pherin Fields is, and neither party has explained his or her appearance as Plaintiffs' counsel's "client" on this document.
[4]Plaintiffs' amended complaint actually states the opposite, that "the MIA issued its decision and found that Nationwide did not breach its contract with the Plaintiff and therefore, there *was* failure to act in good faith on the part of Nationwide." (Am. Compl. ¶ 24 (emphasis added).) Later filings by Plaintiffs, however, show that this phrasing was simply a typographical error, albeit a glaring one. (*See* Opp'n Mem. Supp. 3, ECF No. 21-1.)

Mot. Dismiss.) Defendant has answered Count I. (*See* Answer, ECF No. 20.) Defendant's motion has been fully briefed and is now properly before the Court.

## II.     *Standard for Motion to Dismiss*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III.    *Analysis*

Maryland provides a special cause of action for lack of good faith by a property, casualty, or individual disability insurer in handling claims under insurance policies issued, sold, or delivered in Maryland. *See* Md. Code Ann. Cts. & Jud. Proc. § 3-1701(b). In order to bring such a claim in court, the insured must first exhaust her administrative remedies by bringing the claim

against the insurer before the MIA. Md. Code Ann. Ins. § 27-1001(d); *Bierman Family Farm, LLC v. United Farm Family Ins. Co.*, 265 F. Supp. 3d 633, 637-38 (D. Md. 2017).[5]

A claim for lack of good faith is as it sounds: an insured alleges that an insurer did not act in good faith when it handled her insurance claim. "Good faith" is defined in the statute as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." Md. Code Ann. Cts. & Jud. Proc. § 3-1701(a)(4). This definition is only so specific, and "[c]ases construing section 3-1701's good-faith standard are sparse." *All Class Constr., LLC v. Mutual Ben. Ins. Co.*, 3 F. Supp. 3d 409, 416 (D. Md. 2014). Luckily, the instant dispute does not require a full exposition of this standard, as the Court can suffice with a few basic principles.

First, the standard of good faith is judged under the "totality of the circumstances," including the following factors:

> [ (1) ] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; [ (2) ] the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] [ (3) ] the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.

*All Class Const., LLC*, 3 F. Supp. 3d at 416 (alterations in the original) (quoting *Cecilia Schwaber Trust Two v. Hartford Acc. and Indem. Co.*, 636 F. Supp. 2d 481, 486-87 (D. Md. 2009)). Second, delay in handling a claim generally cannot serve as the sole basis for a lack of good faith claim. *See* Md. Code Ann. Cts. & Jud. Proc. § 3-1701(f). However, delay in handling a claim can serve as the sole basis for such a claim when the insurer does not act "within the time period specified by statute or regulation for investigation of a claim." *Id.* To be clear, delay beyond a statutory or regulatory time period is not *per se* lack of good faith under the statute.

---
[5] Certain lack of good faith claims can be brought in court without first exhausting administrative remedies, but those exceptions are not relevant here. *See* Md. Code Ann. Ins. § 27-1001(c)(2).

5

The statute simply proscribes finding a lack of good faith on the sole basis of delay when that delay does not extend beyond a statutory or regulatory timeline.  Finally, an allegation that an insurer has failed to pay policy benefits cannot serve as the sole basis for a lack of good faith claim.  *See Bierman*, 265 F. Supp. 3d at 638.  This is because "[i]t is well-settled under Maryland law that an insured claiming that an insurer has failed to pay policy benefits may only pursue contract remedies."  *Id.* (collecting cases).  An allegation of breach of contract is therefore a necessary but not sufficient condition for a lack of good faith claim.  An insured must prove that an insurer breached the insurance contract in order to bring a lack of good faith claim, *see Schwaber*, 636 F. Supp. 2d at 488 n.6, but the insured must prove more than simply breach of contract to prevail, *see Bierman*, 265 F. Supp. 3d at 638.  With these principles in mind the Court can turn to Defendant's arguments as to why Plaintiffs' claim should be dismissed.

Defendant makes two arguments, and both fail for the same reason:  Defendant misunderstands the text of the statute as well as the text of Plaintiffs' complaint.  Defendant, citing the statute that creates a cause of action for lack of good faith, Maryland Code (2013 Repl. Vol.), § 3-1701 of the Courts and Judicial Proceedings Article ("Section 3-1701"), first argues that delay cannot serve as the basis for a lack of good faith claim.  (*See* Mot. Dismiss. Mem. Supp. 4, ECF No. 19-1.)  This is an incorrect interpretation of the statute.  It may be true that delay, alone, will rarely serve as the sole basis for a lack of good faith claim, because a finding of lack of good faith rests on a totality of the circumstances, and an insurer's procrastination, without more, might rarely be egregious enough for a jury to find a lack of good faith.  But the statute only *forbids* a finding of lack of good faith on the sole basis of delay when the delay does not extend beyond a statutory or regulatory time period.  *See* Md. Code. Cts. & Jud. Proc. § 3-1701(f).  Plaintiffs here contend that Defendant failed to respond to their Section 19-511 letter

6

within sixty days, *as mandated by* Section 19-511(c). Therefore, under the plain language of Section 3-1701(f), the Defendant's delay *can* serve as the *sole* basis for a lack of good faith claim because its delay *did* extend beyond a statutory time period. That language does not mean the Defendant's delay here is *per se* lack of good faith. It simply means that if Plaintiffs asserted only such delay as the basis for their claim, a finding in their favor would not be prohibited by this statute.

But that is *not* the only allegation Plaintiffs assert as the basis for lack of good faith. In addition to Defendant's delay, Plaintiffs allege, *inter alia*, that Defendant paid insufficient benefits without disputing the nature or cost of Mrs. Barry's injuries or providing an explanation, and that Defendant refused to negotiate. (Am. Compl. ¶ 34.) Thus, in addition to misunderstanding the statute, Defendant's argument here fails in part because it misunderstands the amended complaint. *Even if* Defendant had been dilatory *without* crossing any statutory or regulatory tripwire, such delay could still be considered by a factfinder in assessing a lack of good faith, because the delay alleged here is not the *sole basis* for a finding of lack of good faith.

Defendant presents another argument in an attempt to remove its alleged delay from this litigation, and this argument dabbles in misinterpretation of another statutory provision. Section 19-511 provides the sixty-day statutory time frame that Defendant allegedly surpassed, making its delay potential sole fodder for a lack of good faith claim under Section 3-1701. Defendant argues that Section 19-511 cannot implicate Section 3-1701 because Section 19-511 provides an "exclusive remedy": once an insurer has failed to respond to the insured within sixty days that simply means the insured is free to accept the settlement offer. (*See* Am. Reply 3, ECF No. 23-1 (quoting Md. Code Ann. Ins. § 19-511(f).) Defendant is half right. Under Section 19-511(f) an insured *is* free to accept a settlement offer if an insurer fails to respond within sixty days, but that

7

relief for the insured does not overcome the strength of the drafter's command in Section 19-511(c): "Within 60 days of receipt of the notice . . . the uninsured motorist insurer *shall send* to the injured person [written consent or refusal]." (emphasis added). "Shall" creates a "time period specified by statute or regulation for investigation of a claim by an insurer" under Section 3-1701(f), not a suggestion of a time period. If Defendant failed to respond within that time period, which, at this motion to dismiss stage the Court assumes it did, then its delay *could* serve as the sole basis for a finding of lack of good faith under Section 3-1701(f). Furthermore, this issue is somewhat irrelevant given the fact that, as stated above, delay is not the sole basis for Plaintiffs' claim. And it is just such an additional basis that brings us to Defendant's second argument in favor of dismissal.

Defendant's second argument, beyond the purported inapplicability of delay in Plaintiffs' claim, is the purported inapplicability of Defendant's failure to pay benefits to Plaintiffs' claim. (*See* Mot. Dismiss Mem. Supp. at 5-6.) Essentially, Defendant contends that, absent the claims of delay, Plaintiffs' only allegation that could serve as the basis for a lack of good faith claim is that they asked for $100,000 but Defendant only offered $33,924. This allegation, Defendant's correctly note, cannot serve as the sole basis for a finding of lack of good faith. *See Bierman*, 265 F. Supp. 3d at 638. Defendant, however, again misreads the applicable statute and Plaintiffs' complaint.

First, Defendant appears to engage in a tortured reading of Section 3-1701(f) in order to argue that a disagreement over the "extent of payment" cannot serve as the basis of a lack of good faith claim. (*See* Mot. Dismiss Mem. Supp. at 5.) Section 3-1701(f) states in full:

> *Insurer's action within prescribed time period is not failure to act in good faith.*
> An insurer may not be found to have failed to act in good faith under this section solely on the basis of delay in determining coverage or the extent of payment to

8

which the insured is entitled if the insurer acted within the time period specified by statute or regulation for investigation of a claim by an insurer.

Defendant, according to a parenthetical, reads that language as: "An insurer may not be found to have failed to act in good faith under this section solely on the basis of . . . the extent of payment to which the insured is entitled . . . ." (Mot. Dismiss Mem. Supp. at 5 (omissions in the original) (quoting Md. Code Ann., Cts & Jud. Proc. § 3-1701(f)).) This reading conveniently leaves out the operative phrase, "delay in determining." This section, as its heading makes clear, removes delay as the sole basis for a determination of lack of good faith, when such delay does not violate another statute or regulation. Thus, an insurer may not be found to have failed to act in good faith under Section 3-1701 solely on the basis of *delay in determining* the "extent of payment" to which the insured is entitled. If disagreement over "the extent of payment to which the insured is entitled" cannot, itself, serve as the sole basis for a lack of good faith claim, as Defendant argues, that law must come from someplace else; Section 3-1701(f) does not do such work for the Defendant.

Maryland case law, however, does. *See Bierman*, 265 F. Supp. 3d at 638. "It is well-settled under Maryland law that an insured claiming that an insurer has failed to pay policy benefits may only pursue contract remedies." *Id.* (collecting cases). So, *if* Plaintiffs' sole ground for their lack of good faith claim was that Defendant did not pay sufficient policy benefits, their claim would be dismissed under Rule 12(b)(6). Again, however, that is not the sole ground for their claim. Plaintiffs are not alleging that Mrs. Barry demanded X amount of money, Defendant only paid Y, and therefore Defendant failed to act in good faith. Plaintiffs allege that Defendant did not act in good faith as shown by, *inter alia*, its dilatory responses, failure to properly explain its coverage offer, failure to negotiate, *and* failure to pay the amount of money Plaintiff requested. Assuming such allegations are proven, these may be sufficient for a factfinder to find

that Defendant did not act in good faith in handling Mrs. Barry's UIM claim. *See Schwaber*, 636 F. Supp. 2d at 486-87 (quoting *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So.2d 55, 63 (Fla. 1995)) (stating that a lack of good faith is a totality of the circumstances review, taking into account "measures taken by the insurer to resolve the coverage dispute *promptly* . . . [and] the substance of the coverage dispute . . . [and] the insurer's diligence and thoroughness in investigating the facts").

To summarize, the Court finds that Plaintiffs have stated sufficient allegations to present a lack of good faith in handling their UIM claim, and therefore survive the Defendant's motion to dismiss under Rule 12(b)(6). This is not to say that Plaintiffs have stated such a claim in expert fashion. There is much in Plaintiffs' complaint that is conclusory and confusing. It states that the MIA found Defendant had failed to act in good faith, when it appears that the opposite is true. (*Compare* Am. Compl. ¶ 24 *with* Opp'n Mem. Supp. 3, ECF No. 21-1.) It alleges that "Nationwide has acted in bad faith by failing to make a timely and informed judgment based upon honesty and diligence supported by evidence that it had when it evaluated the Plaintiff's [sic] claim," which amounts to a thinly veiled rewording of the statutory definition. (Am. Compl. ¶ 28.) It states that "[u]nder §27-1001, a claim for failure to act in good faith may involve either an allegation of improper denial of coverage OR the failure to pay the full value of a claim"; an allegation that states a legal conclusion (poorly, as it fails to even point the Court to a specific provision of Section 27-1001) and suggests, confusingly, that a claim could not include both an improper denial of coverage and a failure to pay the full value of a claim, which, if it is true and has any relevance at all, would seem to undercut Plaintiffs' case. (*See id.* ¶ 28.) Plaintiffs allege that "Nationwide failed to take any action regarding the Plaintiffs' claim from December 15, 2015 until November 14, 2016" but nowhere explain what happened on December

15, 2015. (*Id.* ¶ 30.) Plaintiffs' allege that Defendant violated Code of Maryland Regulations § 31.15.07.04(B), which requires insurers to provide a status update of a claim every forty-five days. (*See id.* ¶ 31.) But it is unclear *which* claim Defendant allegedly failed to provide a status update for, or even the alleged date upon which *any* claim was filed.[6]

Most troublingly, the Amended Complaint is unclear as to *who* is suing the Defendant. The Plaintiffs caption their amended complaint as "Amanda and Sean Barry, Plaintiffs v. Nationwide Mutual Insurance Company, Defendant." (Am. Compl. p. 1.) But the introduction states, "*The Plaintiff, Amanda Barry,* by and through her attorneys . . . *files* suit against the Defendant . . . ." (*Id.* (emphasis added).) Mr. Barry is not mentioned. Under "JURISDICTION," the amended complaint alleges that "Plaintiffs are husband and wife and residents of Towson, Maryland," but then in the "FACTS COMMON TO ALL COUNTS" section Mr. Barry does not make an appearance. (*Id.* at 1-3.) The most serious omission is Mr. Barry's absence from the amended complaint's prayers for relief. Count I concludes "**WHEREFORE,** the Plaintiff, Amanda Barry, demand [sic] judgment against Defendant, Nationwide Mutual Insurance Company, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00)." (*Id.* at p. 5 (emphasis in the original).) Count II's prayer is similar, except it does not even hint (through subject and verb disagreement) that there is another party lurking in this case. (*See id.* at p. 8 ("WHEREFORE, the Plaintiff, Amanda Barry, *demands* judgment against the Defendant . . . ." (second emphasis added).)

---

[6] Plaintiffs may believe that the Section 19-511 letter constitutes the commencement of their UIM claim, but it would seem this letter cannot do so, because it states explicitly that "this letter is to put you [i.e. Defendant] on notice of my client's intention to file a UIM claim." (Section 19-511 Letter, Am. Compl. Ex. 2, ECF No. 17-3.) This would suggest that Plaintiffs' UIM claim was initiated at some point *after* August 12, 2016 (when this letter was written). Plaintiffs provide no date for when they first filed an insurance claim after Mrs. Barry's accident. Plaintiffs state that they "filed a claim with Nationwide immediately after the collision occurred," (*see* Am. Compl. ¶ 31) which would likely be sometime in July or August of 2014, but also state that "Nationwide failed to take any action regarding Plaintiff's claim from December 15, 2015 until November 14, 2016" (Am. Compl. ¶ 30), perhaps suggesting that something was filed on December 15, 2015, over a year after the collision occurred.

Under different circumstances, these glaring omissions would prompt the Court to *sua sponte* dismiss Mr. Barry as a party in this case, but the Court will restrain from such a measure for two reasons. First, the Court will always construe pleadings "so as to do justice," Fed. R. Civ. P. 8(e), and there are *just enough* allegations in the amended complaint to make it at least somewhat apparent that Mr. Barry *is* a party, *is* requesting relief, and that his absence from so much of the amended complaint is just so much sloppy drafting. In addition to the inclusion of Mr. Barry in the caption, the amended complaint does allege that "*Plaintiffs* have an automobile insurance policy," that "Defendant is therefore liable *to the Plaintiffs*" and that "*Plaintiffs* . . . are entitled to be paid by the Defendant." (Am. Compl. ¶¶ 14, 16-17 (emphasis added).) Furthermore, the complaint does allege that both Mrs. and Mr. Barry submitted a claim to Defendant, and therefore it follows that any impropriety by Defendant in handling this claim would result in harm to both Mrs. and Mr. Barry. (*See id.* ¶ 18 (referring to "Plaintiffs' §19-511 letter"); *id.* ¶ 19 (referencing "Amanda Barry and Sean Barry's loss of consortium claim").) Second, one of the "major functions" of a pleading is to "giv[e] notice of the nature of a claim or defense." 5 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1202 (3d ed.). And it appears from the Defendant's answer, motion to dismiss, and reply, that Defendant is on notice that Mr. Barry is a party in this action and requesting relief. Defendant has nowhere challenged Mr. Barry's presence in this litigation, nor mentioned the aforementioned omissions and inconsistencies in Plaintiffs' amended complaint.[7] For these reasons the Court will not *sua sponte* dismiss Mr. Barry from this action, despite Plaintiffs' counsel's numerous drafting errors.

---

[7] Defendant earlier filed a motion to dismiss that was mooted by Plaintiffs' amended complaint, and in that earlier motion challenged the entire complaint as insufficiently specific under Rule 12(b)(6). (*See* Mot. Dismiss Mem. Supp., ECF No. 11.) Yet even then Defendant did not mention the fact that only Mrs. Barry was mentioned in the prayers for relief, or any of the other glaring omissions and inconsistencies related to the parties in Plaintiffs' complaint. (*Id.*)

Ultimately, despite these many pleading errors, the amended complaint would put Defendant on notice of at least the following: that (according to Plaintiffs) Plaintiffs filed some insurance complaint (at least a UIM claim) and were not provided a status report, that Plaintiffs notified Defendant of a settlement offer from GEICO and Defendant did not respond within sixty days, that Defendant did not pay out as much as Mrs. Barry requested, even though it did not dispute Mrs. Barry's calculations, and that Defendant did not provide a sufficient explanation of its payment decision nor did it negotiate further with Mrs. Barry.[8] It is not the job of the Court at this early stage to determine whether Defendant did in fact fail to act in good faith. Rather, it is the job of the Court to determine whether, drawing all inferences in Plaintiffs' favor, the Plaintiffs have stated allegations that, if proven true, could constitute a lack of good faith. Despite the amended complaint's many failings, the Court finds that they have.

### IV. *Conclusion*

Plaintiffs have stated sufficient plausible allegations to state a claim for lack of good faith under Maryland law. Accordingly, Defendant's motion to dismiss Count II of Plaintiffs' complaint will be denied by accompanying order.

DATED this 6th day of February, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge

---

[8] Even this allegation, that Defendant did not provide sufficient explanation, is not *entirely* clear from Plaintiffs' complaint. (*See* Am. Compl. ¶ 34 ("The Defendant . . . advised that a total value of $63,924.00 with sufficient without any explanation or supporting documentation to justify the evaluation." [sic]).)